ANDREW E. ROSSI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 96470.   Promulgated April 4, 1940.

*Moultrie Hitt, Esq.*, for the petitioner.
*Frank B. Schlosser, Esq.*, for the respondent.

736

OPINION.

BLACK: Subsequent to the holding by the Supreme Court of the United States that the processing taxes imposed by the Agricultural Adjustment Act were unconstitutional, Congress in the Revenue Act of 1936 enacted "Title III, Tax on Unjust Enrichment." Provisions of that act applicable to the instant case are printed in the margin.[1]

---

[1] SEC. 501. TAX ON NET INCOME FROM CERTAIN SOURCES.

(a) The following taxes shall be levied, collected, and paid for each taxable year (in addition to any other tax on net income), upon the net income of every person which arises from the sources specified below:

\* \* \* \* \* \* \*

(2) A tax equal to 80 percentum of the net income from reimbursement received by such person from his vendors of amounts representing Federal excise-tax burdens included in prices paid by such person to such vendors, to the extent that such net income does not exceed the amount of such Federal excise-tax burden which such person in turn shifted to his vendees.

\* \* \* \* \* \* \*

(1) The taxes imposed by subsection (a) shall be imposed on the net income from the sources specified therein, regardless of any loss arising from the other transactions of the taxpayer, and regardless of whether the taxpayer had a taxable net income (under

Petitioner contests respondent's determination on the ground that he did not receive any of the proceeds of the draft from the Pillsbury Flour Co., either directly or indirectly. The uncontradicted evidence is that the check was received in 1937 by W. C. Houston, who in 1935 had been made the assignee of the partnership assets belonging to Dixie Mills Distributing Co. for the benefit of creditors. Houston cashed the check and spent the money for his own personal use. Houston, among other things, testified at the hearing:

The check was deposited in the bank and held some little time, and the fact that we had already made a complete settlement with the creditors on the assets, I did not know what disposition to make of the check; meantime I was out of employment and naturally—the check had been there for some-time—and I used it for my own personal use. None of it was ever paid to Mr. Rossi or his creditors.

The respondent does not contend that petitioner actually received any of the money but he does contend that Houston was petitioner's agent and, as such, received the money for and on behalf of petitioner. Respondent contends that, under the assignment for the benefit of creditors executed by the Dixie Mills Distributing Co., Houston was authorized to take possession of all assets belonging to the partnership and to dispose of them for the benefit of the creditors named therein; that a reimbursement for taxes previously paid by the partnership is an asset which under the assignment for the benefit of creditors, should have been paid either to petitioner or to the creditors for the account of petitioner's firm; that the mere fact that Houston appropriated the money to his own use is immaterial; that Houston is still liable to petitioner either for the return of the money or the payment of it to the creditors in accordance with the terms of the agreement; and that petitioner has not proved that Houston would not, or could not, make restitution if requested by petitioner or if ordered to do so by some court of law.

In the first place, before discussing the respective contentions of the parties, it seems clear that petitioner would not be liable for a greater unjust enrichment tax than a tax based on one-half of the check for $778.15. The Commissioner seems to have entirely disregarded the fact that petitioner had an equal partner in the business, one Meyer Zuber. Zuber was entitled to receive one-half the partnership assets and we know of no authority which would sustain a tax against petitioner based on Zuber's one-half of partnership assets. To that extent at least, the Commissioner's determination can not be sustained. One person can not be taxed on income belong-

the income-tax provisions of the applicable Revenue Act) for the taxable year as a whole; except that if such application of the tax imposed by subsection (a) is held invalid, the tax under subsection (a) shall apply to that portion of the taxpayer's entire net income for the taxable year which is attributable to the net income from the sources specified in such subsection.

ing to another. *Hoeper* v. *Tax Commission of Wisconsin*, 284 U. S. 206.

Should petitioner be taxed on the one-half of the draft which belonged to him, although it is clear he never received any of the proceeds nor were they used in any way for his benefit?

As has already been stated, the Commissioner's contention, in short, is that Houston was the agent of petitioner and that the receipt by an agent of income for his principal is the same for tax purposes as if the principal had received the income direct. In support of this proposition, respondent cites *Frank E. Best*, 26 B. T. A. 1070. Cf. *Margaret Wilson Baker*, 30 B. T. A. 188; affd., 81 Fed. (2d) 741.

It may be stated as a general rule that receipt of income by an agent is equivalent to receipt by the principal. The theory is that the principal is in constructive receipt of income. This rule applies, even though the taxpayer is on a cash basis. See Paul and Mertens, vol. 1, sec. 9.10. So, if at the time of the receipt by Houston of the reimbursement draft in question he was the agent of the partnership to receive and collect the draft, then we think it is clear that petitioner is taxable on one-half of the amount of the draft, even though it is conceded that he never actually received any of the proceeds.

We do not think, however, that Houston was the agent of the partnership at the time he received the check, cashed it, and spent the money for his own personal use. A reading of the assignment by the partnership to Houston will show that the partnership conveyed all of its then known assets to Houston to be sold and converted into cash, and, after the payment of certain small preferred claims, the balance was to be paid pro rata to two general creditors, with the requirement that "acceptance by the above named creditors under this agreement shall constitute a release of all our indebtedness to them."

Houston testified at the hearing that sometime in 1936 final settlement with the creditors was completed under the terms of the agreement. Thus it seems clear that the agency which Houston had undertaken to administer was entirely at an end sometime in 1936. There were no longer any creditors of the partnership. Their claims had been satisfied by the payments which they had accepted under the terms of the assignment. So far as was then known, there were no more assets to administer. It is a recognized principle of law that an agency terminates after the purpose for which it was created has been fulfilled. See 2 C. J. S., Agency, sec. 72.

In 1937, when Houston received the draft for $778.15 from Pillsbury Flour Co. payable to Dixie Mills Distributing Co., he had no right to cash it. There were no further creditors to pay. He should have immediately turned it over to the two former partners or, per-

haps more properly, he should have returned it to the Pillsbury Flour Co. The partnership of Dixie Mills Distributing Co. was defunct. It had been completely liquidated. Houston clearly had no right to cash the draft and use the money for his own personal needs, and, in doing so, he was not acting as agent for the partners and it would appear that the income was taxable to him rather than to petitioner. Cf. *National City Bank* v. *Helvering*, 98 Fed. (2d) 93.

Under such circumstances, in our judgment, petitioner is not to be taxed with any of the income, because he did not receive it. It may well be that petitioner has a claim against Houston for one-half of the amount of the draft and that if pressed hard enough this claim can be collected. He may also have an alternative claim against the bank for allowing Houston to cash the check under the circumstances herein narrated, but if these things be true, he can only be taxed on this income, when and if he actually receives it, since he is on the cash basis.

Cf. *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, in which the Supreme Court, among other things, said:

The net profits were not taxable to the company as income of 1916. *For the company was not required in 1916 to report as income an amount which it might never receive.* * * * [Italics ours.]

Only on the assumption that Houston was acting as petitioner's agent when he received and cashed the draft could it be taxed to petitioner on the theory of constructive receipt. That theory, for reasons we have already stated, we reject.

*Decision will be entered for petitioner.*