JOSEPH A. PAXSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109648.   Promulgated September 30, 1943.

Aaron Smith, C. P. A., for the petitioner.
Robert S. Garnett, Esq., for the respondent.

**OPINION.**

Tyson, *Judge:* The petitioner does not question the respondent's determination as to the amounts paid as commissions by Amoco. His contention is that the commissions were the income of the Albany Co. and therefore are not taxable to him. The petitioner has not filed a brief, but in his petition alleges that, in making the contract of August 1, 1935, he was acting as the agent of the Albany Co. and that all things done in performance of the contract were done by and in behalf of that company.

If the petitioner entered into the contract as the agent for or on behalf of the Albany Co., he would not be taxable on the commissions.

*Richard T. Gillespie*, 2 B. T. A. 1317; *Herbert Choynski*, 14 B. T. A. 9; *Andrew E. Rossi*, 41 B. T. A. 734. However, the facts are inconsistent with any claim of contractual relationship between the Albany Co. and Amoco, either direct or through petitioner as an agent of the Albany Co. In the negotiations preceding the contract of August 1, 1935, the petitioner sought to have the Albany Co. employed as agent for the sale of Amoco gasoline. Amoco knew that the Albany Co. was bound by an existing contract to deal exclusively in Richfield products, and it refused for that reason to make any contract with the Albany Co. It finally agreed to and did enter into a contract with the petitioner individually. The contract designated the petitioner as the agent of Amoco to procure purchasers of its products and it provided for the payment of the commissions on sales to petitioner. It required petitioner to furnish an employee fidelity bond, to give his exclusive time and attention to his employment, and to account for all amounts collected on cash sales. It imposed a personal liability for any sales made on credit without the authorization of Amoco. These provisions, as well as other provisions, of the contract, together with the circumstances attending its execution, leave no doubt that the obligations thereunder to Amoco were those of petitioner individually and that the obligations thereunder of Amoco were to petitioner. The petitioner personally made all the sales and Amoco paid all the commissions to him until September 14, 1938, when Amoco contracted with the Albany Co. to supply the latter's resale requirements. Amoco at all times regarded the petitioner as the person entitled to the commissions.

That, prior to September 14, 1938, the Albany Co. was not a selling agent for Amoco, but was rather a purchaser of that company's products through petitioner as its agent, is further indicated by the instrument executed by petitioner on October 28, 1936, guaranteeing the account of Albany Co. for sales made it on credit.

We are of the opinion and so hold that in making the contract with Amoco of August 1, 1935, and in doing all things in the performance thereof, the petitioner was acting in his individual capacity and not as the agent of the Albany Co.

In his testimony the petitioner states that the contract "was turned over to the Albany Service Stations, for their exclusive use. They haul all the gas, carried all the gas, carried insurance, all compensations, everything that went with the conduct of the business. * * * They were to have the commission." He further states that, prior to the signing of the contract, he had an oral understanding with Amoco that the contract was going to be assigned to the Albany Co. The petitioner apparently seeks to establish the conclusion that he assigned the contract to the Albany Co. with the consent of Amoco.

The contract, into which all prior agreements with regard to the subject matter thereof were merged, itself prescribes the manner in which it is to be assigned or modified, namely, with the consent in writing of Amoco. The petitioner informs us that he never made any assignment in writing and that Amoco never consented in writing to any assignment or modification. Thus, if the petitioner did transfer the contract to the Albany Co. by an oral assignment, his act was ineffectual and invalid, in view of the express prohibition contained in the contract and in view of the further fact that there is no evdence whatever to show that Amoco, subsequent to the execution of the contract, consented orally to the arrangement which the petitioner claims he made with the Albany Co. respecting the contract.

We hold that the commissions here involved constituted income of the petitioner, and we affirm the respondent's determination.

Reviewed by the Court.

*Decision will be entered for the respondent.*

DISNEY and KERN, *JJ.*, concur only in the result.

BLACK, *J.*, dissents.

---

MURDOCK, *J.*, dissenting: I feel that the majority opinion in this case will bring about a miscarriage of justice and, therefore, I respectfully dissent. It ignores the substance and exalts the legal form of what took place.

Concededly, all of the writings recognized the petitioner as the contracting party. But the fact is he did not perform the contract or earn any commissions under it. He bore none of the expenses and had no facilities with which to carry on the work. The contract was performed by Albany, using its own equipment, and bearing all of the expenses. One of those expenses was the payment of a regular salary to the petitioner. Albany reported the benefits from the contract by a reduction in its cost of goods sold.

The Amoco business was the principal business of Albany during these years, without which its operations would have ceased. The petitioner frankly disclosed all of the documentary evidence against him, but testified, nevertheless, that all parties understood throughout that Albany, rather than he, would perform under the contract. But however that may be, it did do the work and the petitioner did not. The injustice of taxing him with commissions which he did not earn, own, or benefit from, while Albany deducts all expenses, and while the petitioner also reports the salary from Albany for managing this very work, would seem to be obvious.

VAN FOSSAN and HARRON, *JJ.*, agree with this dissent.